1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF  RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISA DEPHILLIPPIS, on behalf of herself, all others similarly situated, and the general public,<br><br>        Plaintiff,<br><br>        v.<br><br>LIVING ESSENTIALS, LLC, a Michigan Limited Liability Company; INNOVATION VENTURES, LLC, a Michigan Limited Liability Company,<br><br>        Defendants. | Case No.:   **'18CV0404 BEN MDD**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1

## **TABLE OF CONTENTS**

2

I.      JURISDICTION AND VENUE ....................................................................1

II.     NATURE OF THE ACTION ......................................................................1

III.    PARTIES .................................................................................................4

IV.     FACTUAL ALLEGATIONS ......................................................................4

A.      Defendants' Product Labels Deceive Consumers and Violate the Law....................4

B.      Competitors Label Their Products Lawfully. ..........................................9

C.      Plaintiff's Purchases of the Products ....................................................9

V.      DELAYED DISCOVERY ........................................................................11

VI.     THE PRODUCTS ..................................................................................12

VII.    CLASS ACTION ALLEGATIONS ..........................................................13

VIII.   CAUSES OF ACTION ...........................................................................16

IX.     PRAYER FOR RELIEF ..........................................................................25

X.      JURY DEMAND ..................................................................................26

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Elisa DePhillippis v. Living Essentials, et al.*
CLASS ACTION COMPLAINT

Plaintiff Elisa DePhillippis ("Plaintiff"), on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby brings this action against Living Essentials, LLC, and Innovation Ventures LLC (collectively "Defendants"), and upon information and belief and investigation of counsel, alleges as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). At least one defendant is a citizen of a state different from that of the Plaintiff, the putative class size is greater than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs.

2.      This Court has both general and specific personal jurisdiction over the Defendants Living Essentials, LLC and Innovation Ventures, LLC.

3.      The Court has personal jurisdiction over Defendants because both companies have affirmatively established and maintained contacts with the State of California.

4.      This Court has specific personal jurisdiction arising from Defendants' decision to advertise and sell the Products in California. Defendants have sufficient minimum contacts with this State and sufficiently avail themselves of the markets of this State through the promotion, sales, and marketing of the Products to consumers within the State to render the exercise of jurisdiction by this Court reasonable.

5.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this venue, including specifically the relevant transactions between Plaintiff and Defendants, and, in the alternative, both Defendants are subject to the Court's personal jurisdiction with respect to this action.

## II.   NATURE OF THE ACTION

6.      This is a consumer class action lawsuit for violations of California's consumer protection laws.

7.     Defendants manufacture, distribute, advertise, market, and sell a variety of flavored "energy shot" beverage products – pocket-sized plastic beverage containers containing 1.93 ounces of artificially-sweetened water in which small amounts of vitamins and minor nutrients and large amounts of caffeine are dissolved (the "Products").[1]

8.     Defendants label the Products with various natural fruit names including, for example, "Grape," "Citrus," "Lime," and "Pomegranate". The Product labels display the fruit name and pictured representations of each of the namesake natural fruits.

9.     None of the Products contain any of the fruit or fruit juices represented by the names and pictures on the label; all are flavored with added flavors to counterfeit the flavor of the fruit named on the label.

10.     Figure 1, below, is a true and accurate representation of one/examples of Defendants' "energy shot" products.

Figure 1: Product Front Labels

 

---

[1] Most of Defendants' "energy shot" products are caffeinated. Defendants also manufacture and distribute some decaffeinated "energy shot" and "protein shot" products.

11.     Under California law, any product that is advertised as containing a natural fruit or fruit flavor, that does not in fact contain any of that fruit or fruit juice, must clearly disclose this fact on the front label.

12.     The "Pomegranate" product contains no pomegranate or pomegranate juice.

13.     The "Grape" product contains neither grapes nor grape juice.

14.     The fruit that each product purportedly is made from is advertised conspicuously on the label.

15.     Conspicuously absent, however, is the legally-required disclosure informing consumers that the Products are artificially flavored and contain none of the fruit or juice shown on the label.

16.     The Products are all misbranded and unlawfully labeled. All of the Products fail to disclose on the Product front label, as required by law, that they are artificially flavored.

17.     Defendants' packaging and labeling scheme is intended to give consumers the impression that they are buying a premium, all-natural product instead of a product that contains no fruit or fruit juice and that is artificially flavored.

18.     Defendants' Product labeling constitutes food fraud under California law and violates California false advertising, consumer protection, and unfair competition laws.

19.     Plaintiff, who purchased the Products in California and relied on and was deceived by Defendants' unlawful conduct, brings this action on her own behalf and on behalf of California consumers to remedy Defendants' unlawful acts.

20.     On behalf of the Class as defined herein, Plaintiff seeks an order compelling Defendants to, *inter alia*: (1) cease packaging, distributing, advertising and selling the Products in violation of U.S. FDA regulations and California consumer protection law; (2) re-label or recall all existing deceptively packaged Products; (3) inform California consumers regarding the Products' misbranding; (4) award Plaintiff and the other Class-members restitution, actual damages, and punitive damages; and (5) pay all costs of suit, expenses, and attorney fees.

## III.  **PARTIES**

21.    Defendant Living Essentials, LLC ("Living Essentials") is a Michigan limited liability company with its principal place of business at 38955 Hills Tech Dr. Farmington Hills, Michigan.

22.    Defendant Innovation Marketing, LLC ("Innovation Marketing") is a Michigan limited liability company with its principal place of business at 38955 Hills Tech Dr. Farmington Hills, Michigan.

23.    Neither Defendant is registered with the California Secretary of State to do business in California.

24.    Living Essentials manufactures, advertises, markets, distributes, and sells the Products in California and throughout the United States. Living Essentials is also identified on the Product labels as the Product distributor.

25.    Innovation Ventures does business as Living Essentials LLC and is also identified on Product labels as an entity responsible for the content of Product labels.

26.    Plaintiff Elisa DePhillippis is a resident and citizen of San Diego County, California, who purchased the Products multiple times in San Diego County for personal consumption.

## IV.  **FACTUAL ALLEGATIONS**

### A. **Defendants' Product Labels Deceive Consumers and Violate the Law.**

27.    Defendants manufacture, distribute, and sell a variety of "energy shot" beverages under the brand name, "5-Hour ENERGY" (the "Products.")

28.    The Products' labels all mislead consumers and violate California law.

29.    As shown in Figure 1, above, the Pomegranate flavor Product's label shows lifelike pictorial representations of a fresh, ripe, halved pomegranate.

30.    The Product's name, "Pomegranate", along with these pictorial representations informs the consumer, by operation of California and Federal law, that the Product is made from the named natural fruit.

31.   The "Pomegranate" product, however, contains no actual pomegranate juice. It is flavored with "natural and artificial flavors" to mimic the flavor of pomegranates.

32.   Defendants fail to disclose this on the Product's front label. This is a violation of California law.

33.   All of the other flavor-variety Products are similar:  all are flavored to resemble the named and pictured natural fruit, but none contain any actual juice from the displayed fruit.

34.   All of the Products are flavored instead with "natural and artificial flavors" but fail to disclose this on the Products' front labels as required by law.

35.   All the Products' labels violate California law.

36.   Defendants admit in the Product ingredient lists that the Products contain natural and artificial flavors and contain no actual fruit juice.

37.   Because they contain artificial flavoring, federal and state law require the Products to have front-label disclosures to inform consumers.

38.   The Products disclose the artificial flavors in fine print on the rear label, but deceptively omit this legally-required disclosure from the front labels that consumers see.

39.   California law, incorporating and identically mirroring U.S. Food, Drug, and Cosmetic Act regulations by reference, requires that a food's front label accurately describe the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

40.   Under FDA regulations, a recognizable primary flavor identified on the front label of a food Product is referred to as a "characterizing flavor".  21 CFR 101.22.

41.   FDA regulations and California law hold that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor". 21 C.F.R. 101.22(i).

42.   "Grape," "Pomegranate," "Berry," and the other fruit flavors advertised on the Products' front labels are primary recognizable flavors for the Products. These are

therefore by law considered characterizing flavors.

43.     If a product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. 101.22(i) (3), (4).

44.     A food product's label must also include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . .  and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. 102.5(c).

45.     Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice. *Id*.

46.     The Product labels do not include any of the required label statements.

47.     The Products' labels all violate California law.

48.     The Products also contain an ingredient identified as "malic acid".

49.     Malic acid, specifically the form of malic acid included in the Products, is also an artificial flavor.

50.     The Product's label therefore violates California law in, at a minimum, three different ways.

51.     First, because the Product contains added flavoring ingredients that create, simulate and reinforce the Product's characterizing flavors, the front label is required by law to disclose the presence of those additional flavorings rather than misleadingly suggest that the Product's flavor is conferred only by the fruits shown and advertised. Cal. Health & Saf. Code §109875 *et seq*, (Sherman Law), incorporating 21 CFR 101.22.[2]

_____

[2] California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Saf. Code §109875 *et seq*, incorporates into California law all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act. An act or omission that would violate an FDCA regulation

*Elisa DePhillippis v. Living Essentials, et al.*
CLASS ACTION COMPLAINT

52.    Second, the Product ingredient list violates Federal and state law because it misleadingly identifies the malic acid constituent only as a generic "malic acid" instead of using the correct, specific, non-generic chemical name of the ingredient as required by law. *See* 21 CFR 101.4(a)(1).

53.    The malic acid Defendants put in the Products is not a natural flavoring material, but is instead a synthetic industrial chemical called dl-malic acid that is manufactured in a chemical factory from petroleum feedstocks.[3]

54.    This 'malic acid' ingredient is synthesized from benzene or butane—components of gasoline and lighter fluid, respectively—through an intermediate conversion to maleic anhydride via a series of chemical reactions which involve highly toxic chemical precursors and chemical byproducts.

55.    The dl-malic acid in Defendants' Products is derived from a petrochemical, not from "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material. . . ." The malic acid Defendants put in the Products is therefore an artificial flavor under U.S. federal and California law.

56.    Both the natural and unnatural forms of malic acid are considered GRAS (generally recognized as safe) for use as flavorings; the d-malic acid form, however, has not been thoroughly studied for its health effects in human beings. Both forms confer a "tart, fruity" flavor to food products[4] and simulate the flavor of real fruit.

57.    Under Federal and California state regulations, Defendants were required to place prominently on all the Products' front labels a notice sufficient to allow consumers to understand that the Products contained artificial flavorings.

58.    Defendants failed to do so, deceiving consumers and violating California law.

_____

necessarily therefore violates California's Sherman Law. *Id*. at §110100. Regulatory citations in the text are to California's Sherman Law and reference the corresponding federal regulation for convenience.

[3] D-malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.
[4] https://thechemco.com/chemical/malic-acid/; last visited Feb. 22, 2018.

*Elisa DePhillippis v. Living Essentials, et al.*
CLASS ACTION COMPLAINT

59.    Accordingly, Plaintiff was unaware that the Products contained artificial flavoring and did not contain the advertised fruits or fruit juices when she purchased them.

60.    When purchasing the Products, Plaintiff was seeking products of particular qualities, that were flavored only with the natural ingredients claimed on the label and which did not contain artificial flavoring.

61.    Plaintiff is not alone in these purchasing preferences. As reported in Forbes Magazine, 88% of consumers polled recently indicated they would pay more for foods perceived as natural or healthy. "All demographics [of consumers]—from Generation Z to Baby Boomers—say they would pay more" for such products, specifically including foods with no artificial flavors.[5]

62.    California law required Defendants to include on the Products' front labels a notice to alert California consumers that the Products are artificially flavored.

63.    Defendants failed to do so.

64.    Accordingly, Defendants' Products were misbranded and illegal to distribute or sell in California. Cal. Health & Saf. Code §110740; §110760; §110765.

65.    Plaintiff lost money as a result of Defendants' conduct because she purchased a Product that contained undisclosed and undesirable artificial flavors at a price premium.

66.    John Compton, the CEO of a Fortune 50 competing beverage manufacturer, stated to investors at the Morgan Stanley Consumer & Retail Conference, "We have talked extensively to consumers about this idea, and they come back and tell us the number one motivation for purchase is products that claim to be all natural."

67.    Defendants' labeling and marketing of the Products reflects this knowledge of consumers' preferences for natural products -- not by actually making the Products with natural ingredients, but by concealing the fact that the Products contain artificial flavors.

---

[5] *Consumers Want Healthy Foods--And Will Pay More For Them*, FORBES MAGAZINE (Feb. 15, 2015), https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; last visited Feb. 22, 2018.

*Elisa DePhillippis v. Living Essentials, et al.*
CLASS ACTION COMPLAINT

**B. Competitors Label Their Products Lawfully.**

68.    Defendants not only deceive consumers but also gain an unfair commercial advantage in the marketplace by labeling the Products deceptively.

69.    Manufacturers of competing energy products label their products lawfully.

70.    Other manufacturers of artificially-flavored products accurately label their artificially-flavored energy beverage products as "Artificially Flavored."

71.    Other competing manufacturers, offering products whose labels suggest just as Defendants' do that their products are naturally flavored, truly are made only with natural ingredients.

72.    Defendants, however, conceal their use of artificial flavoring, deceiving consumers, illegally cutting costs and increasing profits, and competing unfairly and unlawfully in the marketplace, hurting their competitors and the marketplace as well as consumers.

73.    Defendants' conduct injures competing manufacturers that do not engage in the same illegal behavior.

74.    These manufacturers compete for market share and limited shelf space, as well as for consumers' dollars. Defendants' competitors do so lawfully. Defendants do not.

**C. Plaintiff's Purchases of the Products**

75.    Plaintiff purchased several varieties of the Products, relying on Product labeling that claimed the Products contained the fruits or fruit juices shown on the labels.

76.    Plaintiff purchased the Products in California multiple times during the Class Period as defined herein.

77.    Plaintiff purchased the Products at various locations during the Class Period, most recently in October and November of 2017 at the 7-11 Store at 525 C Street, San Diego, California, and the 7-11 Store at 3019 Meade Avenue, San Diego, California.

78.    Plaintiff purchased the Products at the marked retail prices, typically $3.29 or $3.49 for a single 1.93-oz plastic bottle, and from time to time in multiple packs at

*Elisa DePhillippis v. Living Essentials, et al.*
CLASS ACTION COMPLAINT

higher prices, for example in a "4-pack" for $10.99.

79.    Plaintiff first discovered Defendants' unlawful conduct described herein in December 2017, when she learned the Products' characterizing flavors were deceptively simulated using artificial flavoring even though Defendants failed to disclose that fact on the Products' labels.

80.    Plaintiff relied upon and was deceived by the Products' deceptive labeling.

81.    Plaintiff, as a reasonable consumer, is not required to subject consumer food products to laboratory analysis, to scrutinize the back of the label to discover that the product's front label is false and misleading, or to search the label for information that state law requires be displayed prominently on the front – and, in fact, under state law is entitled to rely on the statements that Defendants deliberately place on the product's labels.

82.    Defendants, but not Plaintiff, knew or should have known that this labeling was false and in violation of federal regulations and state law.

83.    Plaintiff, and the putative Class she intends to represent, paid a price premium for the Products because of the Products' false advertising.

84.    Because Plaintiff reasonably assumed the Products to be free of artificial flavoring, based on the Products' labels, when they were not, she did not receive the benefit of her purchases. Instead of receiving the benefit of products free of artificial flavoring, she received a Product that was unlawfully labeled to deceive the consumer into believing that it was exclusively flavored with the natural fruits shown on the label and contained no artificial flavoring.

85.    Plaintiff would not have purchased the Product in the absence of Defendants' misrepresentations and omissions. Had Defendants not violated California law, Plaintiff would not have been injured.

86.    As described above, products perceived by the consumer as natural sell at a premium price compared to synthetic or artificially-flavored products.

87.    The Products were worth less than what Plaintiff paid for them and class members would not have paid as much as they have for the Products absent Defendants'

false and misleading statements and omissions.

88.    Plaintiff lost money because of Defendants' unlawful behavior. Plaintiff altered her position to her detriment and suffered loss in an amount equal to the price premium she paid for the Products as falsely labeled and advertised.

89.    Plaintiff intends to, desires to, and will purchase the Products again when she can do so with the assurance that Products' labels, which indicate that the Products are lawful and are labeled lawfully consistent with the Products' ingredients.

## V.    DELAYED DISCOVERY

90.    Plaintiff did not discover that Defendants' labeling of the Products was false and misleading until December 2017, when she learned the Products contained but were not lawfully labeled to disclose the artificial flavoring or the absence of natural fruit.

91.    Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in her purchase and consumption of the Products. Nevertheless, she would not have been able to discover Defendants' deceptive practices and lacked the means to discover them given that, like nearly all consumers, she relies on and is entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law. Furthermore, Defendants' labeling practices and non-disclosures—in particular, failing to correctly identify the artificial flavor in the ingredient list, or to disclose on the front labels that the Products contained either natural or artificial flavoring, or to accurately identify the kind of malic acid that Defendants put in the Products— impeded Plaintiff's and Class members' abilities to discover the deceptive and unlawful labeling of the Products throughout the Class Period.

92.    Because Defendants actively concealed their illegal conduct, preventing Plaintiff and the Class from discovering their violations of state law, Plaintiff and the Class are entitled to delayed discovery and an extended Class Period tolling the applicable statute of limitations.

# VI.    THE PRODUCTS

93.    Defendants manufacture and distribute several varieties of 5-Hour Energy products that unlawfully contain artificial flavors undisclosed on the Products' front labels and fail to disclose that they contain no natural fruit juice.

94.    The Products included herein include:

| | |
|---|---|
| Grape 5-hour ENERGY | Apple Pie Extra Strength 5-hour ENERGY |
| Citrus Lime 5-hour ENERGY | Berry Extra Strength 5-hour ENERGY |
| Berry 5-hour ENERGY | Blue Raspberry Extra Strength 5-hour ENERGY |
| Pomegranate 5-hour ENERGY | Grape Extra Strength 5-hour ENERGY |
| Orange 5-hour ENERGY | Sour Apple Extra Strength 5-hour ENERGY |
| Pink Lemonade 5-hour ENERGY | Strawberry Watermelon Extra Strength 5-hour ENERGY |
| | Peach Mango Extra Strength 5-hour ENERGY |

95.    Each of the Products identified above are substantially similar to the Products that were purchased by Plaintiff in that each of the above Products fail to adequately disclose artificial flavoring ingredients.

96.    During the Class Period, Class members purchased one or more of the Products and incurred the same injuries as alleged herein for Plaintiff's purchases of the Products.

97.    The legal violations, false advertising, and consumer and market injuries resulting from Defendants' false, misleading, and unlawful advertising, marketing, and labeling of all the Products are sufficiently similar to make it reasonable to include Class members' purchases of all the Products in this Class Action.

98.    Class members' purchases of all these Products are therefore included herein.

## VII.   CLASS ACTION ALLEGATIONS

99.    Plaintiff brings this action on behalf of herself and all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure 23.

100.    The Class is defined as follows:

**All California citizens who purchased the Products in California on or after January 1, 2012 until the date notice to the Class is disseminated in this action, excluding Defendants and Defendants' officers, directors, employees, agents, and affiliates, and the Court and its staff.**

101.    During the Class Period, the Products unlawfully contained the undisclosed artificial flavors d-malic acid or dl-malic acid and failed to disclose on the front labels that the Products were artificially and naturally flavored, did not contain the fruit or fruit juice advertised on the labels, and were otherwise improperly labeled. Defendants failed to label the Products as required by California law.

102.    The proposed Class meets all criteria for a class action, including numerosity, typicality, superiority, and adequacy of representation; there is a well-defined community of interest in questions of law and fact common to the Class.

103.    The proposed Class satisfies numerosity. The Products are offered for sale at over two thousand supermarkets in California alone, the Class numbers at minimum in the tens of thousands. Individual joinder of the class members in this action is impractical. Addressing the class members' claims through this class action will benefit Class members, the parties, and the courts.

104.    The proposed Class satisfies typicality. Plaintiff's claims are typical of and are not antagonistic to the claims of other Class members. Plaintiff and the class members all purchased the Products, were deceived by the false and deceptive labeling, and lost money as a result.

105.    The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class members' claims because each class member's claim is modest, based on the Product's retail purchase price which is generally under

$5.00. It would be impractical for individual class members to bring individual lawsuits to vindicate their claims.

106.  Because Defendants' misrepresentations were made on the labels of the Product itself, all Class members including Plaintiff were exposed to and continue to be exposed to the omissions and affirmative misrepresentations.

107.  The proposed Class representative satisfies adequacy of representation.  The Plaintiff is an adequate representative of the Class as she seeks relief for the Class, her interests do not conflict with the interests of the Class members, and she has no interests antagonistic to those of other class members. Plaintiff has retained counsel competent in the prosecution of consumer fraud and class action litigation.

108.  There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

109.  Questions of law and fact common to Plaintiff and the Class include:

a.  Whether Defendants failed to adequately disclose on Product front labels the presence of artificial flavors in the Products;

b.  Whether Defendants misleadingly labeled the Products as if they contained natural fruits or fruit juices;

c.  Whether Defendants failed to properly disclose the artificial ingredient dl-malic acid in the Products;

d.  Whether Defendants' labeling omissions and representations constituted false advertising under California law;

e.  Whether Defendants' conduct constituted a violation of California's Consumer Legal Remedies Act;

f.  Whether Defendants' conduct constituted a violation of California's Unfair Competition Law;

g.  Whether Defendants' conduct constituted a violation of California's False Advertising Law;

14

h. Whether Defendants' front label statement of contents, for example "Pomegranate", was an affirmative representation of the Product's composition creating an express warranty;

i. Whether Defendants' conduct constitutes a breach of implied warranties under California's Commercial Code;

j. Whether Defendants' conduct violates California's Sherman Law or U.S. Food and Drug Administration labeling regulations incorporated by reference;

k. Whether the statute of limitations should be tolled on behalf of the Class due to Defendants' deceptive conduct;

l. Whether the Class is entitled to restitution, actual damages, punitive damages, attorney fees and costs of suit, and injunctive relief; and

m. Whether members of the Class are entitled to any such further relief as the Court deems appropriate.

110. Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

111. Class members lost money as a result of Defendants' unlawful behavior. Class members altered their position to their detriment and suffered loss in an amount equal to the price premium they paid for the Products as falsely labeled and advertised.

112. Further, Defendants have acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

113. Class treatment is therefore appropriate for this Action.

///

///

///

///

*Elisa DePhillippis v. Living Essentials, et al.*
CLASS ACTION COMPLAINT

## VIII.    CAUSES OF ACTION

### I.

### FRAUD BY OMISSION

#### CAL. CIV. CODE §§ 1709-1710

*By Plaintiff and the Class against Defendants*

114.   Plaintiff realleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

115.   Defendants actively concealed material facts, in whole or in part, with the intent to induce Plaintiff and the members of the Class to purchase the Productions. Specifically, Defendants actively concealed the truth about the Products by not disclosing the existence of artificial flavoring ingredients on the front label of the Products as is required by California and Federal Law.

116.   Plaintiff and the Class were unaware of these omitted material facts and would not have purchased the Products, or would have paid less for the Products, if they had known of the concealed facts.

117.   Plaintiff and the Class suffered injuries that were proximately caused by Defendants' active concealments and omissions of material facts.

118.   Defendants' fraudulent concealments and omissions were a substantial factor in causing the harm suffered by Plaintiff and the class members as they would not have purchased the products at all if all material facts were properly disclosed.

### II.

### NEGLIGENT MISREPRESENTATION

#### CAL. CIV. CODE §§ 1709-1710

*By Plaintiff and the Class against Defendants*

119.   Plaintiff realleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

120.   Defendants had a duty to disclose to Plaintiff and the class members the existence of artificial flavoring ingredients on the front labels of the Products pursuant to

California and Federal Law. Defendants were in a superior position than Plaintiff and the class members such that reliance by Plaintiff and the class members was justified. Defendants possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

121. During the applicable class period, Defendants negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the products, including the existence of artificial flavoring ingredients.

122. Defendants were careless in ascertain the truth of their representations in that they knew or should have known that Plaintiff and the class members would not have realized the true existence of artificial flavoring ingredients in the Products.

123. Plaintiff and the class members were unaware of the falsity of Defendants' misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

124. Plaintiff and the class members would not have purchased the Products, or would have paid less for the Productions, if the true facts had been known.

### III.

### VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT

### CAL. CIV. CODE §§ 1750, *et seq.*

### *By Plaintiff and the Class against Defendants*

125. Plaintiff realleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

126. The California Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.* ("CLRA") prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services to consumers.

127. Plaintiff and the Class are "consumers" as defined by Cal. Civ. Code §1761(d). The Products are a "good" as defined by Cal. Civ. Code §1761.

128. Defendants' failure to label the Products in compliance with federal and state labeling regulations, was an unfair, deceptive, unlawful and unconscionable practice.

129.    Defendants' conduct violates the CLRA, including but not limited to, the following provisions:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

130.    As a result of Defendants' violations, Plaintiff and the Class suffered ascertainable losses in the form of the price premiums they paid for the deceptively labeled and marketed Products, which they would not have paid had these Products been labeled truthfully, and in the form of the reduced value of the Products purchased compared to the Products as labeled and advertised.

131.    On or about February 14, 2018, prior to filing this action, Plaintiff sent a CLRA notice letter to Defendants which complies with California Civil Code 1782(a). Plaintiff sent Defendants, individually and on behalf of the proposed Class, a letter via Certified Mail, advising Defendants that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct copy of the letter is attached hereto as Exhibit 1.

132.    Wherefore, Plaintiff seeks injunctive relief for Defendants' violations of the CLRA. If Defendants fail to take the corrective action detailed in Plaintiff's CLRA letter within thirty days of the date of the letter, then Plaintiff will seek leave to amend her complaint to add a claim for damages under the CLRA.

# IV.

## VIOLATIONS OF THE UNFAIR COMPETITION LAW

## (UNLAWFUL PRONG)

### CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

### *By Plaintiff and the Class against Defendants*

133.   Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

134.   Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

135.   The UCL borrows violations of other laws and statutes and considers those violations also to constitute violations of California law.

136.   Defendants' practices as described herein were at all times during the Class Period and continue to be unlawful under, *inter alia*, FDA regulations and California's Sherman Law.

137.   Among other violations, Defendants' conduct in unlawfully packaging and labeling and distributing the Product in commerce in California violated U.S. FDA and California packaging and labeling regulations.

138.   The Products' front labels fail to disclose that they contain synthetic artificial flavoring and are not flavored with and do not contain any of the natural fruits shown on the labels, in violation of 21 CFR 101.22 and California's Sherman Law.

139.   Defendants fail to inform consumers of the presence of artificial flavors in the Products on the front-label as required by law.

140.   Defendants' practices are therefore unlawful under Section 17200 *et seq* of the California Civil Code.

# V.

## VIOLATIONS OF THE UNFAIR COMPETITION LAW

## (UNFAIR PRONG)

### CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

### *By Plaintiff and the Class against Defendants*

141.   Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

142.   Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unfair . . . business act or practice." Defendants' practices violate the Unfair Competition Law "unfair" prong as well.

143.   Defendants' practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendants does not outweigh the gravity of the harm to consumers.

144.   While Defendants' decision to label the Products deceptively and in violation of California law may have some utility to Defendants in that it allows Defendants to sell the Products to consumers who otherwise would not purchase an artificially-flavored food product at the premium retail price, or at all, if it were labeled correctly, and to realize higher profit margins than if they formulated or labeled the Products lawfully, this utility is small and far outweighed by the gravity of the harm inflicted on California consumers.

145.   Defendants' conduct also injures competing food product manufacturers, distributors, and sellers, that do not engage in the same unfair and unethical behavior.

146.   Moreover, Defendants' practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

147.   Plaintiff's purchases and all class members' purchases of the Products all took place in California.

148.   Defendants labeled the Products in violation of federal regulations and

20

California law requiring truth in labeling.

149.   Defendants consciously failed to disclose material facts to Plaintiff and the Class in Defendants' advertising and marketing of the Product.

150.   Defendants' conduct is unconscionable because, among other reasons, it violates 21 C.F.R. 101.22(c), which requires all foods containing artificial flavoring to include:

> A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

151.   Defendants' conduct is also "unconscionable" because it violates, inter alia, 21 C.F.R. 101.22, which requires all food products for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label.

152.   Defendants intended that Plaintiff and the Class rely on Defendants' acts and omissions to induce them to purchase the Products.

153.   Had Defendants disclosed all material information regarding the Products, Plaintiff and the Class would not have purchased the Products or would only have been willing to pay less for the Products than they did.

154.   Plaintiff suffered injury in fact and lost money or property as a result of Defendants' deceptive advertising:  she was denied the benefit of the bargain when she purchased the Products based on Defendants' violation of the applicable laws and regulations, and purchased the Products in favor of competitors' products, which are less expensive, contain no artificial flavoring, or are lawfully labeled.

155.   The acts, omissions and practices of Defendants detailed herein proximately caused Plaintiff and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, the price premium of monies spent to purchase the Products they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

156.    Section 1720 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendants engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code §17200.

157.    Pursuant to California Business & Professions Code §17203, Plaintiff seeks an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to return to the Class the amount of money improperly collected.

# VI.

## VIOLATIONS OF THE FALSE ADVERTISING LAW

### CAL. BUS. & PROF. CODE §§ 17500, *et seq.*

### *By Plaintiff and the Class against Defendants*

158.    Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

159.    Defendants made and distributed, in California and in interstate commerce, Products that unlawfully fail to disclose the presence of artificial flavoring as required by federal and state food-labeling regulations.

160.    The Products' labeling and advertising in California presents the Products as if they were solely naturally-flavored and contain the natural fruit shown on the labels.

161.    Under California's False Advertising Law, Business and Professions Code §17500 *et seq*,

"It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . . any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of

22

reasonable care should be known, to be untrue or misleading. . . ." Cal. Bus. & Prof. Code §1.7500

162.   Defendants' labeling and advertising statements on the Products' labels and in advertising and marketing materials are "advertising device[s]" under the FAL.

163.   Defendants' labeling and advertising statements, which communicated to consumers that the Products contain the identified natural fruit and concealed the fact that they contain synthetic artificial flavor, were untrue and misleading, and Defendants at a minimum by the exercise of reasonable care should have known those actions were false or misleading.  Defendants' conduct violated California's False Advertising Law.

## VII.

## BREACH OF IMPLIED WARRANTIES

### *By Plaintiff and the Class against Defendants*

164.   Plaintiff realleges and incorporates the allegations made elsewhere in the Complaint as if set forth in full herein.

165.   Defendants' label representations also created implied warranties that the product was suitable for a particular purpose, specifically as an exclusively naturally-flavored food product containing the advertised fruit juice. Defendants breached this warranty.

166.   The Products' front labels misleadingly imply that they are flavored only with the natural ingredients comprising the characterizing flavors.

167.   As alleged in detail above, at the time of purchase Defendants had reason to know that Plaintiff, as well as all members of the Class, intended to use the Products as naturally-flavored food products.

168.   This became part of the basis of the bargain between the parties.

169.   Based on that implied warranty, Defendants sold the goods to Plaintiff and other Class members who bought the goods from Defendants.

170.   At the time of purchase, Defendants knew or had reason to know that Plaintiff and the Class members were relying on Defendants' skill and judgment to select or furnish

23

a product that was suitable for this particular purpose, and Plaintiff and the Class justifiably relied on Defendants' skill and judgment.

171.    The Products were not suitable for this purpose.

172.    Plaintiff purchased the Products believing they had the qualities Plaintiff sought, based on the deceptive advertising and labeling, but the Products were actually unsatisfactory to Plaintiff for the reasons described herein.

173.    The Products were not merchantable in California, as they were not of the same quality as other products in the category generally acceptable in the trade.

174.    The Products would not pass without objection in the trade when packaged with the existing labels, because the Products were misbranded and illegal to sell in California.  Cal. Comm. Code 2314(2)(a).

175.    The Products also were not acceptable commercially and breached the implied warranty because they were not adequately packaged and labeled as required. Cal. Comm. Code 2314(2)(e).

176.    The Products also were not acceptable commercially and breached the implied warranty because they did not conform to the promises or affirmations of fact made on the container or label, Cal. Comm. Code 2314(2)(f), and other grounds as set forth in Commercial Code section 2314(2).

177.    By offering the Products for sale and distributing the Products in California, Defendants also warranted that the Products were not misbranded and were legal to purchase in California. Because the Products were misbranded in several regards and were therefore illegal to sell or offer for sale in California, Defendants breached this warranty as well.

178.    As a result of this breach, Plaintiff and the other California consumers in the Class did not receive goods as impliedly warranted by Defendants.

179.    Within a reasonable amount of time after the Plaintiff discovered that the Products breached these warranties, Plaintiff notified Defendants of such breach.

180.    As a proximate result of this breach of warranty, Plaintiff and other California

consumers have been damaged in an amount to be determined at trial.

181.    As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

## IX.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, all others similarly situated in California, and the general public, prays for judgment against Defendant as follows:

A.    An order confirming that this action is properly maintainable as a class action as defined above, appointing Plaintiff and her undersigned counsel to represent the Class, and requiring Defendants to bear the cost of class notice;

B.    An order declaring that the conduct complained of herein violates the CLRA;

C.    An order declaring that the conduct complained of herein violates the UCL;

D.    An order declaring that the conduct complained of herein violates the FAL;

E.    An order declaring that the conduct complained of herein breached express warranties, implied warranties, or both;

F.    An order requiring Defendants to disgorge any benefits received from Plaintiff and any unjust enrichment realized as a result of the improper and misleading labeling, advertising, and marketing of the Products;

G.    An order requiring Defendants to pay restitution and damages to Plaintiff and Class members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable or negligent acts;

H.    An award of punitive damages in an amount to be proven at trial;

I.    An order enjoining Defendants' deceptive and unfair practices;

J.    An order requiring Defendants to conduct corrective advertising;

K.    An award of pre-judgment and post-judgment interest;

L.    An award of attorney fees and costs; and

M.    Such other and further relief as this Court may deem just, equitable, or proper.

## X.   <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all claims for damages. Plaintiff does not seek a jury trial for claims sounding in equity.

DATED: February 22, 2018          Respectfully Submitted,


                                  <u>/s/ Ronald A. Marron</u>
                                  Ronald A. Marron

                                  **LAW OFFICES OF RONALD A. MARRON**
                                  Ronald A. Marron
                                  *ron@consumersadvocates.com*
                                  Michael T. Houchin
                                  *mike@consumersadvocates.com*
                                  651 Arroyo Drive
                                  San Diego, CA 92103
                                  Telephone: (619) 696-9006
                                  Fax: (619) 564-6665
                                  ***Counsel for Plaintiff and the Proposed Class***

*Elisa DePhillippis v. Living Essentials, et al.*
CLASS ACTION COMPLAINT

# EXHIBIT 1

LAW OFFICES OF

# RONALD A. MARRON

A PROFESSIONAL LAW CORPORATION

651 Arroyo Drive                                                    Tel: 619.696.9006
San Diego, California 92103                                         Fax: 619.564.6665

February 14, 2018

**Via: Certified Mail, (receipt acknowledgment with signature requested)**

**Living Essentials, LLC**
38955 Hills Tech Dr.
Farmington Hills, Michigan

**Innovation Marketing, LLC**
38955 Hills Tech Dr.
Farmington Hills, Michigan

*RE:    NOTICE:  Violations of Consumer Protection Laws, Breach of Warranties, and Duty to Preserve Evidence*

Dear Sir or Madam,

    **PLEASE TAKE NOTICE** that this law firm represents Elisa DePhillippis, a purchaser of various 5-hour ENERGY shot products.  All further communications intended for our client must be directed to this office.  This notice and demand letter provides **Living Essentials, LLC and Innovation Marketing, LLC** (collectively "YOU") with notice and demand for corrective action arising from YOUR breaches of warranties, and is meant to comply with the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, and the laws requiring pre-suit demand and notice, including the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA").

## THE 5-HOUR ENERGY PRODUCTS

YOU manufacture, distribute, advertise, market, and sell a variety of flavored "energy shot" beverage products, including Grape 5-hour ENERGY, Citrus Lime 5-hour ENERGY, Berry 5-hour ENERGY, Pomegranate 5-hour ENERGY, Orange 5-hour ENERGY, Pink Lemonade 5-hour ENERGY, Apple Pie Extra Strength 5-hour ENERGY, Berry Extra Strength 5-hour ENERGY, Blue Raspberry Extra Strength 5-hour ENERGY, Grape Extra Strength 5-hour ENERGY, Sour Apple Extra Strength 5-hour ENERGY, Strawberry Watermelon Extra Strength 5-hour ENERGY, and Peach Mango Extra Strength 5-hour ENERGY (collectively "the 5-hour ENERGY Products" or "Products").

The 5-hour ENERGY Products are labeled with various natural fruit names including, for example, "Grape," "Citrus," "Lime," and "Pomegranate." The 5-hour ENERGY Product labels display the fruit name and pictured representations of each of the namesake natural fruits.  However, none of the 5-hour ENERGY Products contain any of the fruit or fruit juices represented by the names and pictures on the label and all are flavored with added flavors to counterfeit the flavor of the fruit named on the label. For example, the "Pomegranate" product contains no pomegranate or pomegranate juice and the "Grape" product contains neither grapes nor grape juice.

Conspicuously absent from the 5-hour ENERGY Product labels is the legally-required disclosure informing consumers that the 5-hour ENERGY Products are artificially flavored and contain none of the fruit or juice shown on the label. The 5-hour ENERGY Products are all misbranded and unlawfully labeled. YOUR packaging and labeling scheme is intended to give consumers the impression that they are buying a premium, all-natural product instead of a product that contains no fruit or fruit juice and that is artificially flavored.

The 5-hour ENERGY Products disclose the artificial flavors in fine print on the rear label, but deceptively omit this legally-required disclosure from the front labels that consumers see. California law, incorporating and identically mirroring U.S. Food, Drug, and Cosmetic Act regulations by reference, requires that a food's front label accurately describe the food product and its characterizing flavors. 21 C.F.R. § 102.5(a). Under FDA regulations, a recognizable primary flavor identified on the front label of a food Product is referred to as a "characterizing flavor." 21 CFR § 101.22. FDA regulations and California law hold that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor." 21 C.F.R. § 101.22(i).

"Grape," "Pomegranate," "Berry," and the other fruit flavors advertised on the Products' front labels are primary recognizable flavors for the Products. These are therefore by law considered characterizing flavors. If a product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. §§

101.22(i) (3), (4). 44.  A food product's label must also include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . .  and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. § 102.5(c). Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice. *Id.*

The 5-hour ENERGY Product labels do not include any of the required label statements and the Products' labels all violate California law. Moreover, the 5-hour ENERGY Products also contain an ingredient identified as "malic acid." Malic acid, specifically the form of malic acid included in the 5-hour ENERGY Products, is also an artificial flavor.

The labels of the 5-hour ENERGY Products, therefore, violate California law in, at a minimum, two different ways. First, because the 5-hour ENERGY Products contain added flavoring ingredients that create, simulate and reinforce the Product's characterizing flavors, the front label is required by law to disclose the presence of those additional flavorings rather than misleadingly suggest that the Product's flavor is conferred only by the fruits shown and advertised. Cal. Health & Saf. Code § 109875 *et seq*, (Sherman Law), incorporating 21 CFR § 101.22. 52. Second, the Product ingredient list violates Federal and state law because it misleadingly identifies the malic acid constituent only as a generic "malic acid" instead of using the correct, specific, non-generic chemical name of the ingredient as required by law.  *See* 21 CFR § 101.4(a)(1). On information and belief, the malic acid YOU put in the Products is not a natural flavoring material, but is instead a synthetic industrial chemical called dl-malic acid that is manufactured in a chemical factory from petroleum feedstocks.

Ms. Elisa DePhillippis purchased several varieties of the 5-hour ENERGY Products, relying on the Product labeling that claimed the Products contained the fruits or fruit juices shown on the labels. Ms. DePhillippis purchased the Products at various locations during the past four years, most recently in October and November of 2017 at the 7-11 Store at 525 C Street, San Diego, California, and the 7-11 Store at 3019 Meade Avenue, San Diego, California. Ms. DePhillippis purchased the Products at the marked retail prices, typically $3.29 or $3.49 for a single 1.93-oz plastic bottle, and from time to time in multiple packs at higher prices, for example in a "4-pack" for $10.99. Ms. DePhillippis reasonably assumed the Products to be free of artificial flavoring, based on the Products' labels, when they were not, she did not receive the benefit of her purchases. Instead of receiving the benefit of products free of artificial flavoring, she received a Product that was unlawfully labeled to deceive the consumer into believing that it was exclusively flavored with the natural fruits shown on the label and contained no artificial flavoring.

Ms. DePhillippis would not have purchased the 5-hour ENERGY Products in the absence of YOUR misrepresentations and omissions.

Demand Letter                                                                Page 4

## **BREACH OF WARRANTIES AND VIOLATIONS OF THE CLRA**

This letter serves to notify you that the 5-hour ENERGY Products' packaging claims created express and implied warranties under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* and state law. Those warranties formed part of the benefit of the bargain and when the Products were not as warranted by YOU, our client suffered economic loss.

Please also be advised that the alleged unfair methods of competition or unfair or deceptive acts or practices are in violation of the Consumers Legal Remedies Act ("CLRA") and include, but are not necessarily limited to:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

YOU have failed to honor your consumer protection obligations. Based upon the above, demand is hereby made that YOU conduct a corrective advertising campaign and destroy all misleading and deceptive advertising materials and products.

Please be advised that your failure to comply with this request within thirty (30) days may subject you to the following remedies, available for violations of the CLRA and other consumer protection statutes, which will be requested in the class action complaint on behalf of our client, and all other similarly-situated California residents:

(1) The actual damages suffered;

(2) An order enjoining you for such methods, acts or practices;

(3) Restitution of property (when applicable);

(4) Punitive damages;

(5) Any other relief which the court deems proper; and

(6) Court costs and attorneys' fees.

Demand Letter                                                                                          Page 5

## DUTY TO PRESERVE EVIDENCE

Lastly, this letter serves as notice of YOUR duty to preserve and retain all documents, tangible items, and electronically stored information that is potentially relevant to this matter. *See, e.g., Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 175 (S.D.N.Y 2004); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-18 (S.D.N.Y 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure preservation of relevant documents."). This firm anticipates that all e-mails, letters, reports, internal corporate instant messages, and other records that are related to the marketing, advertising, and promotion of YOUR 5-hour ENERGY Products will be sought in the forthcoming discovery process. YOU must inform any employees, contractors, and third-party agents (for example product consultants and advertising agencies) to preserve all such relevant information.

YOU are directed to immediately initiate a litigation hold for potentially relevant Electronically Stored Information ("ESI"), documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. YOU are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

• Purging the contents of e-mail repositories by age, capacity or other criteria;

• Using data or media wiping, disposal, erasure or encryption utilities or devices;

• Overwriting, erasing, destroying or discarding back up media;

• Re-assigning, re-imaging or disposing of systems, servers, devices or media;

• Releasing or purging online storage repositories;

• Using metadata stripper utilities;

• Disabling server or IM logging; and,

• Executing drive or file defragmentation or compression programs.

This firm expects that YOU will act swiftly to preserve data on office workstations and servers. YOU should also determine if any home or portable systems may contain potentially relevant data. To the extent that YOU have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, YOU must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's smartphone, voice mailbox or other forms of ESI storage.). Similarly, if YOU used online or browser-based email accounts or services (e.g., Gmail, Yahoo Mail, AOL) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

Please confirm that you have taken the steps outlined in this letter to preserve ESI and tangible documents that are potentially relevant to this action. If YOU have not undertaken the steps outlined above, or have taken other actions, please describe what YOU have done to preserve potentially relevant evidence.

If you believe that any of the assertions in this letter are inaccurate or would like to discuss a confidential resolution of this matter, I urge you to retain counsel and contact the Law Offices of Ronald A. Marron immediately. Mr. Marron can be reached by telephone in the office at (619) 696-9006 or by email at *ron@consumersadvocates.com*. I look forward to YOU taking corrective action. Thank you for your time and consideration in this matter.

Sincerely,

**THE LAW OFFICES OF RONALD A. MARRON**

*/s/ Ronald A. Marron*
RONALD A. MARRON
*Attorney for Elisa DePhillippis*

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

2/14/18

Sent To
Innovation Marketing, LLC
Street & Apt. No., or PO Box No.
38955 Hillstech Dr.
City, State, ZIP+4
Farmington Hills, MI 48331

PS Form 3800, July 2014                    See Reverse for Instructions

7015 0920 0002 4021 8377

